**IT IS ORDERED as set forth below:**



**Date: November 2, 2017**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 16-69785-WLH |
| | ) | |
| T. BARRY GRAY, | ) | CHAPTER 7 |
| | ) | |
|     Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| T. BARRY GRAY, | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| TOREY MCCORMICK, LEE B. PERKINS, ESQ., AND STREETLANE HOMES, LLC d/b/a RPM, Peachtree, | ) | |
| | ) | |
|     Respondents. | ) | |

**ORDER ON MOTION FOR PENALTIES, SANCTIONS,
DAMAGES AND PUNITIVE DAMAGES**

This matter is before the Court on the Debtor's Motion for Penalties, Sanctions, Damages and Punitive Damage ("Motion") [Docket No. 72] which was heard, after notice, on October 26, 2017. The Debtor appeared *pro se*, Lee B. Perkins, Esq. appeared *pro se*, and Anita Kant

1

appeared on behalf of Torey McCormick and Streetlane Homes, LLC ("Streetlane"). No appearance was made for RPM, Peachtree. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157 and this is a core matter pursuant to 28 U.S.C. § 157(b)(2)(O).

## FACTS

The Debtor filed his petition under Chapter 7 of the United States Bankruptcy Code on November 2, 2016. At the time, he and his wife were leasing a home and the monthly rental was $1,100. In the bankruptcy case, the Debtor filed three motions for penalties, sanctions and punitive damages. On December 2, 2016, the Debtor filed such a motion against Streetlane [Docket No. 21]; on January 30, 2017, the Debtor filed such a motion against Jackson EMC [Docket No. 44]; and also on January 30, 2017, the Debtor filed such a motion against RPM [Docket No. 45]. Streetlane filed its motion for relief from stay on January 17, 2017 [Docket No. 38] and was represented by Respondent Lee Perkins.

On February 2, 2017, the Court held a hearing on the Debtor's Motion for Penalties, Sanctions and Punitive Damages against Streetlane, and Streetlane's Motion for Relief from Stay [Docket Nos. 21 and 38]. At that hearing, the Court heard the testimony of Torey McCormick, a property manager with Streetlane, as well as from the Debtor and his wife. At the conclusion of the hearing, the Court found that Streetlane had willfully violated the automatic stay multiple times by arranging for the disconnection of the Debtor's utility service and making numerous personal visits to demand payment of rent and/or that the Debtor and his family immediately vacate the premises. As a sanction, the Court entered an order on February 6, 2017 [Docket No. 52] which provided that Streetlane was to pay the Debtor $1,000 and that the Debtor could remain in the property rent-free through February 28, 2017. The Court lifted the stay effective March 1, 2017 for Streetlane to begin dispossessory proceedings if the Debtor and his family had not moved [Docket No. 53]. Streetlane paid the $1,000 to the Debtor.

2

Later, on April 6, 2017, the Court heard the Debtor's motions against Jackson EMC and RPM. As a result of the testimony presented at that hearing, the Court entered an order denying the Debtor's motion as to Jackson EMC [Docket No. 65] and granted the Debtor's motion with respect to RPM. In its order on the RPM motion [Docket No. 66], the Court found at least ten (10) violations of the automatic stay by RPM and ordered payment to the Debtor of $2,100. The Debtor was discharged on March 16, 2017, and his case was closed on August 18, 2017.

The Debtor and his family did not vacate the premises by March 1 and Streetlane began dispossessory proceedings. Debtor's wife, Shanita Rene'e Gray, filed her own Chapter 7 case (Case No. 17-56437-BEM) on April 6, 2017. She immediately raised issues regarding Streetlane's eviction of her family. On April 27, 2017, Judge Ellis-Monro entered an order denying Mrs. Gray's motion to enforce the automatic stay. On May 31, 2017, Judge Ellis-Monro entered an order denying Mrs. Gray's motion to reconsider Judge Ellis-Monro's prior order. Mrs. Gray received a discharge on August 1, 2017, and her case was closed that day.

This Motion was filed by the Debtor, Mr. Gray, on August 28, 2017, only 10 days after his bankruptcy case was closed. At the hearing on this Motion on October 26, 2017, the Debtor argued that various wrongful acts were taken in connection with the dispossessory action in Gwinnett County and the actual removal of his and his family's property. The Debtor also claimed that Mr. McCormick and Mr. Perkins committed perjury when they represented at the prior hearing (1) that RPM and Streetlane were unrelated companies and (2) that the prior issues causing Streetlane to violate the automatic stay had been resolved by Streetlane. The Debtor also asserted that Streetlane violated the discharge injunction by seeking to collect debt that had been discharged by operation of law in his bankruptcy case and the rent which this Court had ruled would not be payable and by reporting the Debtor's failure to pay the discharged and released

3

rent on his credit reports. The Court heard the testimony of the Debtor and his wife, Mr. Perkins, and Mr. McCormick.

After hearing Mr. Perkins' testimony, the Debtor agreed he had no basis to pursue his Motion against Mr. Perkins. Mr. Perkins is therefore DISMISSED from the Motion.

At the hearing, the Court announced to the Debtor that it did not have authority to address any alleged violations of law that occurred in connection with the dispossessory and that any such violations must be addressed through the appropriate Gwinnett court. As such, the Motion is DENIED to the extent it seeks any penalties, damages or sanctions related to the dispossessory or eviction.

The Debtor believed Mr. McCormick committed perjury when he testified in February that RPM and Streetlane are unrelated companies. Mr. McCormick reiterated that testimony at the October 26 hearing. He explained further that neither RPM nor Streetlane were ever owners of the property. The owner of the property leased by the Debtor and his family is another, unrelated corporation which owns numerous rental homes in Atlanta and elsewhere in the country. RPM was the property manager for the Debtor's home through August 2016. At that time, RPM was terminated as property manager by the owner and Streetlane became the new property manager. Mr. McCormick testified there was no overlapping ownership or employees between RPM and Streetlane as far as he was aware. He testified that RPM was based in Indiana, while Streetlane was based in Texas, and that he had not seen employees from RPM now working for Streetlane. The only relationship between the two entities, if one may call it a relationship, is that each had been retained by the same owner at different points in time to manage the rental of Debtor's home (and other homes). The Debtor also contends Mr. McCormick committed perjury when he testified in February 2017 that actions had been taken to correct the issues which led to Streetlane's violation of the automatic stay; that entries had been

4

made in the "computer system" to insure that everyone working on a particular property would know if the tenant was in a bankruptcy case. Because of the continued collection efforts against the Debtor and his wife, the Debtor believes such testimony was false.

After considering the testimony and credibility of Mr. McCormick, the Court believes Mr. McCormick told the truth, at least as he understood it. Mr. McCormick is a property manager for homes in the Atlanta area. He is not an officer or director of Streetlane or RPM or the owner, and therefore his understanding is limited by his experience. Moreover, no evidence was presented that Mr. McCormick's understanding was incorrect. As the Court explained to the Debtor at the hearing, the amount the Debtor and his wife owed for rent was not owed either to RPM or to Streetlane but to the owner of the property. RPM and Streetlane were management companies hired by the owner to collect funds on behalf of the owner. The Court also believes Mr. McCormick's testimony that he made efforts to rectify the problems which led to the automatic stay violations. He testified that he made entries in the "computer system" reflecting that Mr. Gray was in a bankruptcy case and that when he learned of the collection efforts (discussed below) he verified the entry regarding Mr. Gray's bankruptcy was still in the computer records. Based on the foregoing, the Court finds Mr. McCormick did not commit perjury and no damages, sanctions or penalties are due from him. The Motion is DENIED as to Mr. McCormick.

RPM did not appear at the hearing. Nevertheless, no evidence was presented of any efforts by RPM to collect debts from the Debtor. The Debtor's Motion with respect to RPM is, therefore, DENIED.

The evidence was undisputed, however, that Streetlane continued collection efforts against the Debtor despite the granting of a discharge to the Debtor and the Court's order providing Streetlane could collect no rent from the Debtor through February 28, 2017. Streetlane

5

nevertheless retained Hunter Warfield to collect the debt owed to the owner of the Debtor's home. Hunter Warfield sent a demand letter to the Debtor on July 24, 2017 and again on September 6, 2017. (The Debtor thinks there may have been at least one more letter but no evidence was presented of another one.) Both of the demand letters demanded payment of $14,385 in principal. Each demand letter stated clearly that it was an attempt to collect a debt. The evidence showed that the $14,385 sum included amounts due to the landlord prior to the Debtor's petition date of November 2016 and post-petition amounts which were specifically deemed satisfied by this Court's order of February 6, 2017. Streetlane did not dispute these facts. Mr. McCormick testified he did not know how it happened that Streetlane began collection efforts on this debt because he had made what he believed were the appropriate entries in the "computer system" to indicate the Debtor's bankruptcy filing. The Debtor also testified, without dispute, that Streetlane reported to the credit reporting agencies that the entire $14,385 was due and unpaid. The Court's review of the docket shows that notice of the Debtor's discharge was served on Streetlane on March 18, 2017, before the demand letters were sent.

## LAW

In response to the Motion, Streetlane argued that the Debtor must first re-open the bankruptcy case before pursuing the Motion. The Bankruptcy Code provides that, "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Some commentators contend that reopening a case to enforce the discharge injunction is not required because the administration of the case is not necessary in order for the court to render a decision. The commentators note that determining the enforcement of the discharge injunction is within the court's jurisdiction under 28 U.S.C. § 1334. 6 Collier on Bankruptcy ¶ 350.03[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. Supp. 2013). To the extent reopening this case is necessary in order to adjudicate

6

the Debtor's Motion, the Court construes the Debtor's Motion requesting the damages as such a motion to reopen. Reopening this case in order to address the Debtor's issues is appropriate. The case was only closed for 10 days before the Motion was filed and this current Motion is a continuation of the pre-closing issues which the Court decided. The Court therefore, out of an abundance of caution, reopens this bankruptcy case and waives any fee required for the reopening. **The Clerk is hereby directed to keep the case open until the Court orders otherwise.**

"Section 524 of the bankruptcy code provides the debtor with a post-discharge injunction against collection of debts discharged in bankruptcy, and thus embodies the 'fresh start' concept of the bankruptcy code." Hardy v. U.S. (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996). "[Section 524] is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1321 (11th Cir. 2015) (cites and emphasis omitted). See also Henriquez v. Green Tree Svcing, LLC (In re Henriquez), 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015). A creditor may be sanctioned under the statutory contempt powers of 11 U.S.C. § 105 if the creditor willfully violates the discharge injunction of Section 524 or any other order of the court. McLean, 794 F.3d at 1319; Jove Engineering Inc. v. I.R.S., 92 F.3d 1539, 1554 (11th Cir. 1996); Ginsberg v. Evergreen Security, Ltd. (In re Evergreen Security, Ltd.), 570 F.3d 1257, 1273 (11th Cir. 2009). A creditor willfully violates the discharge injunction if the creditor knows the discharge injunction was invoked and intends the actions which violated the injunction. If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction. Hardy, 97 F.3d at 1390; McLean, 794 F.3d at 1323.

It is undisputed that Streetlane violated the discharge injunction on at least two occasions by having its collection agency send letters to the Debtor demanding payment of the debt that was discharged by law in his bankruptcy case. It is also undisputed that Streetlane violated this Court's order of February 6, 2017 by demanding payment of rent which the Court ordered could not be collected. It is also undisputed that Streetlane violated the discharge injunction by reporting to the credit reporting agencies that the Debtor still owed these sums, including the sums which this Court ordered were not to be paid. There is also no doubt that Streetlane was aware of the Debtor's bankruptcy, and aware of the discharge. Streetlane had already been sanctioned once for violating the automatic stay. Mr. McCormick appeared in this Court to testify in February 2017 and Streetlane paid the sanctions that were ordered for violation of the automatic stay. Streetlane was served with the notice of the Debtor's discharge. So, not only did Streetlane have notice of the Debtor's bankruptcy but actual knowledge of the Debtor's bankruptcy. Nevertheless, Streetlane violated not one but two orders of this Court: the discharge order and this Court's order of February 6, 2017.

Under Section 105, the Court has authority to award damages to the Debtor for these discharge violations and contempt of the Court's February 6, 2017 order. Such damages can include compensatory damages and damages for emotional distress. McLean, 794 F.3d at 1325. Here, the Debtor once again had to file the Motion and take a day off from work to appear before the Court. Additionally, the Debtor testified that the erroneous information reported on the credit reports was hindering his ability to obtain a lease of another home and that he, his wife and his two children, one of whom is a special needs child, lived in a hotel for a month at the rate of $450 per week and were now residing with family. The stress and distress of the family not being able to obtain new housing due to the erroneous information provided by Streetlane was established by the testimony of the Debtor and his wife by clear and convincing evidence. The

8

Debtor established by clear and convincing evidence both the willful violation of the discharge injunction and this Court's February 6, 2017 order and the damages suffered.

The Court ordered at the hearing and hereby reiterates that the Debtor's Motion for damages is granted and Streetlane is directed to mark all sums otherwise owed by Mr. or Mrs. Gray for the lease at issue satisfied and to report such satisfaction to the credit reporting agencies. The Court notes that all rent owed by Mr. Gray through February 28, 2017 has already been discharged or deemed satisfied by this Court's order of February 6, 2017. All rent owed by Mrs. Gray as of April 6, 2017 has also been discharged. The result of the Court's order is the satisfaction of additional non-discharged debt of approximately $4,400 plus any interest and fees which Streetlane may otherwise have attempted to charge the Debtor and his wife. This is a fair assessment of the actual damages suffered by the Debtor, including missed work, time in prosecuting the Motion, the cost of living in a hotel, and including emotional distress damages. The Court recognizes that Mr. and Mrs. Gray did not vacate the premises on March 1 when the Court directed them to do so and that removing them from the premises has been challenging and difficult. Nevertheless, none of that justifies the blatant and willful violation of the discharge injunction and this Court's order evidenced by Streetlane's behavior.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

T. Barry Gray
PO Box 2846
Norcross, GA 30091

Martha A. Miller
Chapter 7 Trustee
PO Box 5630
Atlanta, GA 31107

Mr. Torey McCormick, Property Manager
of Streetlane Homes, LLC
Email: TMcCormick@Streetlane.com

Lee B. Perkins
South Building, Suite 201
5180 Roswell Road
Atlanta, GA  30342

Streetlane Homes, LLC
900 Jackson Street, Suite 710
Dallas, TX  75202-2416

Streetlane Homes, LLC
70 Macon Street
McDonough, GA 30253

Streetlane Homes
d/b/a RPM, Peachtree
PO Box 2109
Woodstock, GA 30188

RPM, Peachtree
1895 Phoenix Blvd, Suite 112
Atlanta, GA  30349

Mr. Dane Hoffman
Email: dhoffman@streetlane.com

Mr. Brandon Benker
Email: Brandon@usrpm.com

Ms. Dorian LaFerrara
Email: dLaferrara@usrpm.com
Email: DorianLaFerrara@mail.propertyware.com
Email: dorian@usrpm.com


Email: collections@usrpm.com